IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| Donald Martin Lieber, ) | |
| ) | |
| Debtor. ) | Bankruptcy No. 18-00766 |
| ) | |

**RULING ON MOTION FOR DECLARATION**

This matter came before the Court on a "Motion for Declaration that Redemption Period is not Tolled and that Issuance of Sherif's Deed will not Violate the Automatic Stay." The Court held a hearing on this matter in Sioux City, Iowa. Daniel L. Hartnett appeared for Iowa-Nebraska State Bank ("Bank"). Wil Forker appeared for Donald Lieber ("Debtor"). The parties submitted briefs regarding this Motion. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

**STATEMENT OF THE CASE**

Debtor defaulted on his mortgage with Bank on his Sioux City property. Bank foreclosed. Bank was the only bidder on the property at the foreclosure sale and now holds the Sheriff's Certificate of Purchase. Upon successful completion of the foreclosure sale, Iowa Code Chapter 628 allows Debtor a one (1) year redemption period. The redemption period was set to expire on July 12, 2018.

Debtor filed a chapter 13 bankruptcy petition on June 5, 2018. Bank then filed this motion, arguing that the automatic stay of 11 U.S.C. § 362 does not toll

the one-year redemption period. Bank urges the Court to issue a declaration that the chapter 13 filing does not toll the redemption period.

While Eighth Circuit case law holds that filing for bankruptcy does not toll the redemption period, Debtor argues that changes to the Bankruptcy Code in 1994 require a different result. Bank disagrees and argues that the changes to the Bankruptcy Code essentially codify the relevant case law.

For the reasons that follow, the Court finds that the filing of a chapter 13 bankruptcy petition and the applicable § 362 automatic stay does not toll the redemption period on a mortgage foreclosure.

## STATEMENT OF THE FACTS

Debtor executed a note with Bank on May 4, 2015. The note was secured by a mortgage on Debtor's property. On March 22, 2017, Bank filed a foreclosure action against Debtor after he defaulted on the note. A Decree of Foreclosure was issued on April 25, 2017. The property at issue was sold at a foreclosure sale on July 12, 2017 where Bank was the only bidder. Bank has been issued a Sherriff's Certificate of Purchase to hold during the redemption period, which allows Debtor to redeem the property within one year under Iowa Code § 628.3. The redemption period was to expire on July 12, 2018. On June 5, 2018, Debtor filed a Chapter 13 petition. Debtor filed a plan that seeks to cure deficient payments to the Bank over the life of the plan. He has not attempted to redeem the property.

## CONCLUSIONS OF LAW AND ANALYSIS

The first issue in this case deals with the interface of the Bankruptcy Code's automatic stay provision and the Iowa Code's real estate redemption period. Iowa Code § 628.3 states that a "debtor may redeem real property at any time within one year from the day of the sale. . .." Iowa Code § 628.3 (2018). A debtor's right to redeem under § 628.3 is complete when debtor pays the entire amount of the debt owed plus applicable fees in accordance with § 628.13. Iowa Code § 628.13 (2018). If debtor does not redeem within one year, § 626.98 requires the sheriff to execute the Sherriff's Deed in favor of the holder of the Certificate of Purchase. Iowa Code § 626.98 (2018).

Debtor did not redeem the property within one year of the foreclosure sale. Debtor argues, however, that the § 362 automatic stay tolls the redemption period—effectively extending his right to redeem the property beyond the one-year statutory window. Thus, the first issue in this case is whether the § 362 automatic stay tolls the redemption period under Iowa law.

In 1985, this Court answered a similar question. In re Lally, 51 B.R. 204 (Bankr. N.D. Iowa 1985). In Lally, the Court determined that the redemption period in an Iowa foreclosure action is not tolled by the § 362 automatic stay. Id. In Lally, the Court relied on the Eighth Circuit's decision in Johnson v. First National Bank of Monteveido, 179 F.2d 270 (8th Cir. 1983). Johnson held that the

3

automatic stay does not enlarge a property right created by state law and therefore the automatic stay did not toll the Minnesota redemption period. Johnson, 179 F.2d at 271; Lally, 51 B.R. 204. This Court found that the Eighth Circuit's analysis in Johnson was applicable in Lally because the statutory schemes between Minnesota and Iowa were "conceptually identical." Lally, 51 B.R. at 206. The current Iowa statutory scheme is the same as it was when Lally was decided.

In Lally, this Court adopted the two-part test laid out in Johnson, which requires the Court to: (1) "'identify the debtors' remaining interest in mortgaged property following a foreclosure sale and determine whether that interest constitutes property of the bankruptcy estate'" and (2) "determine how the automatic stay of § 362(a) applies to the property interest that was part of the bankruptcy estate." Lally, 51 B.R. at 205 (quoting Johnson, 719 F.2d at 276 (8th Cir. 1983)).

Under part one of the test, the Court must identify Debtor's interest and determine whether it constitutes property of the bankruptcy estate. "[W]hatever rights the debtor has in property when his bankruptcy petition is filed continue in bankruptcy." Lally, 51 B.R. at 205. The foreclosure sale at issue here took place on July 12, 2017. Upon completion of the foreclosure sale, Debtor held only bare legal title and a statutory right of redemption under Iowa Code § 628, both of which were set to expired in one year. To exercise his right of redemption, Debtor

4

was required to pay the Clerk's office in the county of the foreclosure the amount owed, plus reasonable fees before July 12, 2018. Iowa Code § 628 (2018). Debtor did not redeem his property before filing bankruptcy on June 5, 2018. Therefore, Debtor's only interest at the time of his June 5, 2018 petition was bare legal titled and a statutory redemption interest, both of which were set to expire on July 12, 2018. In this instance, "'it is only the right of redemption, rather than the property itself, which passes into the bankruptcy estate if the redemption period has not expired at the time the bankruptcy petition is filed.'" Lally 51 B.R. at 206 (quoting Johnson, 719 F.2d at 276).

Under part two of the analysis, the Court must determine how the automatic stay of § 362(a) applies to that property interest. Section 362(a) prohibits the "commencement or continuation. . . of a judicial, administrative, or other proceeding. . . against property of the estate." 11 U.S.C. § 362 (2018). The key phrase of § 362 is "property of the estate." 11 U.S.C. § 362 (2018). As determined in step one, Debtor possessed only the bare legal right of redemption and had no equitable interest in the foreclosed property when he filed bankruptcy. Since Debtor possessed no equitable interest in the property, his right to the possessory interest in the property itself is not protected by the automatic stay. Thus, at the expiration of the redemption period, the action of granting a Sheriff's

5

Deed to the Bank "do[es] not affect **property of the estate**." Lally 51 B.R. at 206 (emphasis in original). As such, the action would not violate the automatic stay.

The Eighth Circuit in Johnson addressed a similar tolling argument and ultimately held that "the automatic stay could not be used to enlarge that property right created by state law." Lally 51 B.R. at 206 (citing Johnson, 719 F.2d at 276). The same conclusion applies here. If this Court were to toll redemption rights upon a filing of bankruptcy, it would impermissibly enlarge state property rights beyond the statutory period granted under Iowa Code § 628.

Debtor does not directly dispute the conclusion this Court reached in Lally, but rather argues that the addition of 11 U.S.C. § 1322(c) under the Bankruptcy Reform Act of 1994 gives him a separate right to cure the default on the property..

§ 1322(c) provides:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
> (1) a **default** with respect to, or that gave rise to, a lien on the debtor's principal residence **may be cured** under paragraph (3) or (5) of subsection (b) **until such residence is sold at a foreclosure sale that is conducted in accordance with nonbankruptcy law**;

11 U.S.C. § 1322(c)(1) (emphasis added). Debtor argues that the change in § 1322(c) gives him the power to "cure" or redeem on this mortgage debt until the sale is complete. Debtor argues the sale does not become complete until after the redemption period has expired. Therefore, Debtor argues that he had a right to

6

cure under § 1322(c) when he filed for bankruptcy and that right was preserved beyond July 12, 2018. Debtor believes he preserved his right to cure under the language of § 1322(c)(1) because he immediately filed a plan proposing to cure the deficiency on his residence which had not yet been "sold" under Iowa law.

Bank disagrees and argues that language now in § 1322(c)(1) essentially codified the analysis in Lally. Bank contends that the language of § 1322(c) now explicitly recognizes that a debtor's ability to delay or modify the creditor's rights under bankruptcy law end at the time of the foreclosure sale. The debtor then has only the statutory redemption period under Iowa law to utilize. The Bank argues Debtor failed to redeem before the redemption period expired.

The Court first finds that the language of § 1322(c)(1) does not call Lally or Johnson into question. That finding does not, however, entirely dispose of the issue. The language in § 1322(c)(1) has been interpreted as providing another right to cure, separate from a state law statutory redemption period.

This issue was recently addressed at length in a well-written opinion by Bankruptcy Judge Richard D. Taylor in In re Ausburn, 524 B.R. 816 (Bankr. E.D. Ark. 2015). Judge Taylor noted that Congress adopted 11 U.S.C. § 1322(c)(1) in 1994 to resolve substantial confusion on this issue:

> Congress adopted subsection (c)(1) in 1994 "to resolve th[e] confusion and [to] create a uniform standard" as to when a debtor's right to cure terminated. Id. at 595 (citing In re Crawford, 232 B.R. 92, 95 (Bankr.N.D.Ohio 1999); In re Tomlin, 228 B.R. 916, 918

7

(Bankr.E.D.Ark.1999)). With the addition of subsection (c)(1), a debtor can now cure a default on a home mortgage "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). In applying this new federal standard, many courts have held that subsection 1322(c)(1) "altered the equation, providing a supplemental, federal, right that enhances state law rights." Stephens, 221 B.R. at 293 (finding that subsection 1322(c)(1) "now grants debtors the opportunity to cure home mortgage defaults up to the foreclosure sale in a civil foreclosure action, whether or not state law principles would have extinguished the debtor's real property rights in the period preceding bankruptcy"). See also In re Connors, 497 F.3d 314, 322 (3rd Cir.2007) (stating that "Congress added subsection (c)(1) to overrule Roach and establish a uniform time—the 'foreclosure sale'—for expiration of a debtor's federal right to cure") (emphasis added); LaPointe, 505 B.R. at 596–97 (discussing the preemptive effect of subsection 1322(c)(1) on a debtor's state law redemption rights as referenced in Beeman and finding that the Beeman court only erred in determining when a foreclosure sale was complete); JP Morgan Chase Bank v. McKinney (In re McKinney), 344 B.R. 1, 6 (Bankr.D.Me. 2006) (observing that subsection (c)(1) provides debtors "with substantive rights that do not exist in state law, rights that endure beyond expiration of the pre-sale redemption period, when the mortgagor's rights in the real estate would otherwise have been cut off"); In re Pellegrino, 284 B.R. 326, 330 (Bankr.D.Conn. 2002) (noting that "a Chapter 13 debtor may argue in good faith that despite an apparent loss of his equity of redemption through the interplay of state law ... he may in essence 'revive' that equitable interest by confirming a Chapter 13 plan which, ... utilizes [subs]ection 1322(c)(1) to cure the mortgage default"); Beeman, 235 B.R. at 524 (finding that "Congress unambiguously intended to preempt state redemption law by fixing the time when a Chapter 13 debtor's rights to cure and reinstate are terminated as when property 'is sold at a foreclosure sale,' regardless of whether state law terminates redemption rights at an earlier time").

In Beeman, the court declared that Congress clearly intended that section 1322(c) would preempt state law and create a federal right to cure that only terminates upon a foreclosure sale. 235 B.R. at 524. Furthermore, the court provided that in preempting state redemption law Congress "directed that state foreclosure law be used in

8

determining [the] point in time [when the foreclosure process concludes]." Id. at 525. Relying on subsection 1322(c)(1), the court held that "Chapter 13 debtors have a federal interest in their principal residences up until the completion of the foreclosure process." Id. at 527.

Many of the cases cited above, including Beeman, rely on Congress's intent in drafting and adopting subsection (c)(1). Senator Grassley clearly conveyed his intent in his floor statement referencing subsection (c)(1), during which he stated:

> Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court (sic) has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 will preempt conflicting state laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

In re Jenkins, 422 B.R. 175, 179 (Bankr.E.D.Ark.2010) (citing 140 Cong.Rec. S. 11462 (daily ed. October 6, 1994) (floor statement of Sen. Grassley)).

In re Ausburn, 524 B.R. at 821-22.

In Ausburn, Judge Taylor noted that the § 1322(c)(1) federal right to cure applied, even though both the equity of redemption and debtor's right of statutory redemption under Arkansas law, were no longer available to debtor. Id. at 819-20, 822-23. However, Judge Taylor further pointed out that:

> In the present case, the addition of subsection 1322(c)(1) enhanced and expanded Chapter 13 debtors' state law property rights by creating a federal right to cure a default on a home mortgage "until such residence is sold at a foreclosure sale" "[n]otwithstanding ... applicable nonbankruptcy law[.]" 11 U.S.C. § 1322(c)(1) (emphasis added). Although FSB correctly asserts and the debtors concur that their

9

statutory and equitable rights of redemption under Arkansas property law terminated prepetition, the debtors' federal right to cure the default on their home, pursuant to 11 U.S.C § 1322(c)(1), did not terminate until the property was "sold at a foreclosure sale."

Id. at 823.

Judge Taylor then turned to State law to determine when the residence is considered to be "sold." He noted that in Arkansas, "it is well-settled that a judicial foreclosure sale is complete upon confirmation of the sale by the court." Id. (cited case omitted).

Thus, in some circumstances, including this one, a bankruptcy debtor will have several sources for a right to cure: (1) State law equity of redemption; (2) the State law statutory redemption; and (3) § 1322(c)(1) of the Bankruptcy Code. Here, it is undisputed Debtor's equity of redemption terminated at the foreclosure sale. Debtor's statutory right is not tolled, as explained above, under the Lally test. Thus, it is no longer applicable. Debtor's only option then is to use the Bankruptcy Code's supplemental right to cure under § 1322(c)(1).

That right allows him to cure until the property is "sold at a foreclosure sale." 11 U.S.C. § 1322(c)(1). The issue here is the meaning of the phrase "sold at a foreclosure sale." Id. There has been some disagreement among the courts as to when the property is "sold" at a foreclosure sale. Judge Taylor noted the different interpretations. Ausburn, 524 B.R. at 823.

Generally, this issue has been broken down into "two schools of thought with respect to § 1322(c)(1)." In re McKinney, 344 B.R. 1 (Bankr. D. Maine 2006). "One approach is to find that the language of § 1322(c)(1) is unambiguous and conclude that the Chapter 13 debtor's rights to cure and reinstate are cut off as of the date of the foreclosure auction." Id; See McCarn v. Wyhy Fed. Credit Union, 218 B.R. 154, 161 (10th Cir. BAP 1998). This approach has been referred to as the "gavel rule" because it cuts off the right to cure "when the gavel falls at a foreclosure sale." In re Connors, 497 F.3d 314 (3d Cir. 2007). Other courts have held that "the statutory language is ambiguous" and "generally conclude that the [time the property is sold should be when] . . . foreclosure sale is complete pursuant to state law." In re McKinney 344 B.R. at 5. This approach has been referred to as the "completed transfer approach." See George Bourguignon, Interpretation of Bankruptcy Code § 1322(c)(1): Arguing for a Bright-Line Approach to Debtor's Statutory Right to Cure a Residential Mortgage Default, 7 U.C. Davis Bus. L. J. 461 (2007).

The Court adopts the "gavel rule" and the property is considered "sold" on July 12, 2017—the date of the foreclosure sale. The plain meaning of the language "sold at a foreclosure sale" refers to a specific event and not a multi-step process." In Re Richek, 525 B.R. 735, 744-45 (Bankr. C.D. Cal. 2015 (adopting Gavel Rule).

In Lally, this Court suggested debtor had only "naked legal title" when he filed bankruptcy near the end of his statutory redemption period.  38 B.R. at 625-626.  The Bank suggests this rule was first stated in Connor v. Long, 19 N.W. 221, 223 (Iowa 1984).  As the Bank correctly points out, purchaser at the foreclosure sale obtains equitable title at the day of the foreclosure sale.  It argues that the sale is completed at the time of the foreclosure sale because the transfer of the sheriff's deed at the end of the redemption period is only a ministerial act not a necessary element to complete the sale.  Id.

The Court further notes that the provision of the Iowa Code section allowing for redemption itself contains language that could be viewed as impacting this issue.  After providing a one-year statutory redemption period, § 628.3 further notes: "Any real property redeemed by the debtor shall thereafter be free and clear from any liability for any unpaid portion of the judgment under which said real property was **sold**."  (Emphasis added).  This language links the time when the property was "sold" to the time of the foreclosure sale.  Moreover, it is clear that Iowa law sets the termination of the equity of redemption and the beginning of the one-year statutory right of redemption to the date the property of the foreclosure sale.  Hawkeye Bank & Trust v. Milburn, 437 N.W.2d 919, 921 (Iowa 1989); First Iowa State Bank v. Hammond, 832 N.W.2d 354 (Iowa Ct. App. 2013).  In this

case, the sheriff's report of sale states that "I sold" the property on the date of the foreclosure sale.

## CONCLUSION

**WHEREFORE**, Bank's Motion for Declaration that Redemption Period is Not Tolled and that Issuance of Sheriff's Deed Will Not Violate the Automatic Stay is GRANTED.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:
April 22, 2019

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

13